IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TAYLOR NICHOLE LEONARD, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NABER SUBWAY, INC., ) | |
| ) | |
|     Serve: Gary Naber, ) | Case No.   7:18CV565 |
|            Registered Agent, ) | |
|            196 Queens Knob ) | |
|            Wytheville, VA 24382 ) | |
| ) | |
| and ) | |
| ) | |
| DOCTOR'S ASSOCIATES, INC. ) | |
| d/b/a SUBWAY IP, INC., ) | |
| d/b/a SUBWAY ) | |
| ) | **JURY TRIAL DEMAND** |
|     Serve: Robert A. Payne, ) | |
|            Registered Agent ) | |
|            11320 Random Hills Rd, ) | |
|            Suite 690 ) | |
|            Fairfax, VA 22030 ) | |
| ) | |
|     Defendants. ) | |

## COMPLAINT

COMES NOW, Plaintiff Taylor Nichole Leonard, by counsel, and states as her Complaint against Naber Subway, Inc. ("Naber Subway") and Doctor's Associates, Inc. d/b/a Subway IP, Inc., d/b/a Subway ("DA"), the following:

### I. Jurisdiction and Venue

1. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Ms. Leonard has suffered discrimination and retaliation, in violation of federal law, pursuant to the Genetic Information Nondiscrimination Act of 2008, as

codified under 42 U.S.C. §§ 2000ff, *et seq*. ("GINA") and discrimination and retaliation, in violation of the Americans with Disabilities Act, as codified under 42 U.S.C. §§ 12101, *et seq* ("ADA").

2. Ms. Leonard is a resident of Bland County, Virginia.

3. Naber Subway is a corporation incorporated under the laws of the Commonwealth of Virginia and maintains its principal place of business in Wythe County, Virginia.

4. DA is a corporation incorporated under the laws of the State of Connecticut with a principal place of business in the State of Connecticut. DA has extensive business contacts within the Commonwealth of Virginia and derives significant revenue from its operations within Virginia, subjecting it to personal jurisdiction under the Virginia Long Arm Statute, Va. Code Ann. § 8.01-328.1.

5. Venue is proper in this Court as a substantial portion of the acts and/or omissions that gave rise to Ms. Leonard's claims occurred in Bland County, Virginia, which is within the geographic bounds of this District. *See* 28 U.S.C. § 1391(b)(2); Western District of Virginia Local Rule 2(a)(7).

6. Ms. Leonard timely filed a Charge of Discrimination with the EEOC. Upon exhausting her administrative remedies, Ms. Leonard received a Notice of Right to Sue, a true and accurate copy of which is attached hereto as **EXHIBIT A**.

## II. Facts

7. At all times relevant to this Complaint, Ms. Leonard's direct supervisor was Gary Naber, owner of Naber Subway.

8. Mr. Naber is a franchisee of two Subway locations directly from DA, located in Bland and also Wytheville, Virginia.

9. During her time at Naber and DA, Ms. Leonard performed her job duties competently.

10. At all times relevant to this Complaint, Ms. Leonard was under the age of eighteen (18).

11. DA provides significant training and oversight of its franchisees.

12. Upon information and belief, DA sets requirements for its franchisee's businesses, such as participation in charitable acts related to nutrition of lower income individuals and training and oversight requirements of Sandwich Artists, who are those individuals that actually create sandwiches and serve customers, and other supervisory employees.

13. Further, DA requires that franchisees purchase food products, restaurant equipment, and marketing material exclusively from DA. Such food products are the items in which Naber Subway and DA gain a significant portion of their revenue.

**Ms. Leonard Suffers From A Disability**

14. Ms. Leonard constantly received praise and regularly worked a significant number of hours per week.

15. Ms. Leonard has suffered from migraine headaches for a number of years.

16. Migraine is a chronic condition affecting the brain and/or vascular system that affects major life functions, such as concentration and thinking. Migraine headaches produce symptoms such as severe sensitivity to light and sound. These symptoms can induce vomiting and vision problems.

17. Migraine headaches are typically controlled with medication. Stress causes the symptoms of migraine to be particularly severe and uncontrolled by medication. This health issue is a recognized disability under the Americans with Disabilities Act ("ADA").

18. Alternatively, Ms. Leonard was regarded by Mr. Naber, Naber Subway, and DA as having a disability.

19. Ms. Leonard was able to perform her employment functions with few accommodations.

**Ms. Leonard Worked With Her Brother, Who Suffers From A Disability**

20. Ms. Leonard is the minor sister of Justin Tyler Leonard, who has simultaneously filed a Complaint against Naber Subway and DA.

21. Mr. Leonard was diagnosed with mild Cerebral Palsy ("CP") at age 13, but likely had the condition since birth. CP is a brain injury or malformation that occurs prior to or at birth. CP is a chronic, permanent condition that affects major life activities, such as walking, talking, or thinking, due to loss of body movement control, muscle control, muscle coordination, muscle tone, reflex, posture and balance. CP can also impact fine motor skills, gross motor skills and oral motor functioning.

22. There is also a known genetic component that increases the risk that an individual will be born with CP. Stress greatly increases the symptoms of CP. This health issue is a recognized disability under the Americans with Disabilities Act ("ADA").

**Ms. Leonard Suffers ADA and GINA Retaliation For Opposing Discrimination And Retaliation Taken Against Mr. Leonard**

23. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Ms. Leonard worked.

24. Bland County, in which the town of Bland is located, has a total population of approximately 7,000.

25. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Mr. Leonard worked.

26. On or about that day, Mr. Naber had become aware that Mr. Leonard had mild CP. Mr. Naber, without warning, summoned Mr. Leonard into the dining room of the Bland Subway restaurant from behind the sandwich station.

27. In front of customers, Mr. Naber loudly exclaimed, "[Tyler], I hear you have [CP]."

28. Mr. Naber, on or about the evening of that day, sent a text message to Ms. Leonard asking her why she "did not warn" Mr. Naber of Mr. Leonard's disability.

29. Specifically, Mr. Naber said, "[Ms. Leonard], you knew something was 'wrong' with your brother. Why didn't you tell me," or words of similar effect. Mr. Naber went on to say and/or suggest that he would not have hired Mr. Leonard had Mr. Naber known of Mr. Leonard's disability.

30. From this date until Ms. Leonard's forced resignation/constructive discharge, Mr. Naber and Ms. Leonard's shift leaders increasingly retaliated against Ms. Leonard for not revealing that her brother, Mr. Leonard, had a disability.

31. On or about February 1, 2017, Mr. Leonard's shift leader accused Mr. Leonard of incorrectly preparing the bread used in the restaurant.

32. Later, Mr. Naber sent a series of text messages to Ms. Leonard complaining about Mr. Leonard. Specifically, Mr. Naber suggested that Ms. Leonard had failed to abide by her "promise" of ensuring Mr. Leonard's "proper" work performance. Mr. Naber also complained that Mr. Leonard could not log into the computer system properly, stating that it was not "rocket science."

33. On or about February 5, 2017, a customer asked for a different type of sandwich after the customer placed his or her order. The shift leader accused Mr. Leonard

of not "fixing the sandwich right" and sent Mr. Leonard home before the end of his scheduled shift.

34. Again, after the incident with Mr. Leonard, Mr. Naber sent a series of inappropriate text messages to Ms. Leonard. Mr. Naber complained about the state of his business and how Ms. Leonard was a type of employee that would make him "broke." Mr. Naber also complained about Mr. Leonard's disability being a "potential issue" that required Ms. Leonard to disclose Mr. Leonard's disability.

35. On or about February 12, 2017, Ms. Leonard was accused by a supervisory employee of "helping [Mr. Leonard] cheat" on a discriminatory and retaliatory test that Mr. Leonard was required to take.

36. Ms. Leonard was not scheduled, nor worked, the day Mr. Leonard took the test.

37. Finally, on or about February 19, 2017, Ms. Leonard's shift leader, Stephanie, cited Ms. Leonard for failing to properly clean the Bland Subway restaurant after the restaurant closed.

38. Ms. Leonard had never been cited for improperly cleaning the restaurant in the approximately one (1) year that she was employed. Ms. Leonard protested that she had cleaned the restaurant to DA guidelines. Shift Leader Stephanie issued an undeserved written warning to Ms. Leonard.

### Ms. Leonard Revealed Her Disability to Management | Did Not Receive An Accommodation Nor Was Able To Engage In Interactive Process

39. Ms. Leonard began to experience increased frequency of migraine headaches due to Mr. Naber's conduct and retaliation.

40. Ms. Leonard was suffering from increased frequency of migraine headaches. These migraine headaches were not being controlled by her regularly prescribed medication. Ms. Leonard also experienced severe hair loss due to the stress created by this unlawful retaliation.

41. Ms. Leonard revealed her disability to her supervisor prior to her constructive discharge.

42. Naber Subway, nor DA, engaged in the interactive process with Ms. Leonard to determine what reasonable accommodation Ms. Leonard would require.

43. Upon information and belief, Ms. Leonard's coworker, Caleb [last name unknown], who also suffers from migraines, was permitted to be in an unpaid leave status as an accommodation.

## Ms. Leonard Constructively Discharged

44. On or about February 21, 2017, after suffering indignities and unfounded disciplinary actions by her supervisors, Ms. Leonard was constructively discharged from employment at Naber and DA.

45. Further, after Ms. Leonard's resignation, Mr. Naber sent Ms. Leonard a text message stating that she was "legally banned" from Naber franchises for "stirring up trouble."

46. Naber Subway is responsible for the actions of Gary Naber, Shift Leader Stephanie, and others against Ms. Leonard based on the doctrine of *respondeat superior* because these actions were taken within the scope of employment.

47. The short temporal proximity between the time Ms. Leonard opposed the discrimination and retaliation suffered by her brother, and Mr. Naber knew or regarded

Ms. Leonard as having a disability, and her constructive discharge from employment supports Ms. Leonard's claims for discrimination and retaliation.

48. The short temporal proximity between the time Mr. Naber knew or regarded Ms. Leonard as having a disability and her constructive discharge from employment supports Ms. Leonard's claims for discrimination and retaliation.

49. As a direct and proximate result of Naber Subway's actions, Ms. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

### III. Counts

### Count I: Discrimination and Retaliation in Violation of the Americans with Disabilities Act

50. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

51. Ms. Leonard has suffered from migraine headaches for a number of years.

52. Migraine is a chronic condition affecting the brain and/or vascular system that affects major life functions, such as concentration and thinking. Migraine headaches produce symptoms such as severe sensitivity to light and sound. These symptoms can induce vomiting and vision problems.

53. Migraine headaches are typically controlled with medication. Stress causes the symptoms of migraine to be particularly severe and uncontrolled by medication. This health issue is a recognized disability under the Americans with Disabilities Act ("ADA").

54. Alternatively, Ms. Leonard was regarded by Mr. Naber, Naber Subway, and DA as having a disability.

55. Ms. Leonard was able to perform her employment functions with or without accommodations.

56. Ms. Leonard is the minor sister of Justin Tyler Leonard, who has simultaneously filed a Complaint against Naber Subway and DA.

57. Mr. Leonard was diagnosed with mild Cerebral Palsy ("CP") at age 13, but likely had the condition since birth. CP is a brain injury or malformation that occurs prior to or at birth. CP is a chronic, permanent condition that affects major life activities, such as walking, talking, or thinking, due to loss of body movement control, muscle control, muscle coordination, muscle tone, reflex, posture and balance. CP can also impact fine motor skills, gross motor skills and oral motor functioning.

58. There is also a known genetic component that increases the risk that an individual will be born with CP. Stress greatly increases the symptoms of CP. This health issue is a recognized disability under the Americans with Disabilities Act ("ADA").

59. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Ms. Leonard worked.

60. On or about January 30, 2017, Mr. Naber had become aware that Mr. Leonard had mild CP. Mr. Naber, on or about the evening of that day, sent a text message to Ms. Leonard asking her why she "did not warn" Mr. Naber of Mr. Leonard's disability.

61. Specifically, Mr. Naber said, "[Ms. Leonard], you knew something was 'wrong' with your brother. Why didn't you tell me," or words of similar effect. Mr. Naber went on to say and/or suggest that he would not have hired Mr. Leonard had Mr. Naber known of Mr. Leonard's disability.

62. From this date until Ms. Leonard's forced resignation/constructive discharge, Mr. Naber and Ms. Leonard's shift leaders increasingly retaliated against Ms. Leonard for not revealing that her brother, Mr. Leonard, had a disability.

63. On or about February 1, 2017, Mr. Leonard's shift leader accused Mr. Leonard of incorrectly preparing the bread used in the restaurant.

64. Later, Mr. Naber sent a series of text messages to Ms. Leonard complaining about Mr. Leonard. Specifically, Mr. Naber suggested that Ms. Leonard had failed to abide by her "promise" of ensuring Mr. Leonard's "proper" work performance. Mr. Naber also complained that Mr. Leonard could not log into the computer system properly, stating that it was not "rocket science."

65. Ms. Leonard began to experience increased frequency of migraine headaches due to Mr. Naber's conduct and retaliation.

66. On or about February 5, 2017, a customer asked for a different type of sandwich after the customer placed his or her order. The shift leader accused Mr. Leonard of not "fixing the sandwich right" and sent Mr. Leonard home before the end of his scheduled shift.

67. Again, after the incident with Mr. Leonard, Mr. Naber sent a series of inappropriate text messages to Ms. Leonard. Mr. Naber complained about the state of his business and how Ms. Leonard was a type of employee that would make him "broke." Mr. Naber also complained about Mr. Leonard's disability being a "potential issue" that required Ms. Leonard to disclose Mr. Leonard's disability.

68. Finally, on or about February 19, 2017, Ms. Leonard's shift leader, Stephanie, cited Ms. Leonard for failing to properly clean the Bland Subway restaurant after the restaurant closed.

69. Ms. Leonard had never been cited for improperly cleaning the restaurant in the approximately one (1) year that she was employed. Ms. Leonard protested that she had cleaned the restaurant to DA guidelines. Shift Leader Stephanie issued an undeserved written warning to Ms. Leonard.

70. On or about February 21, 2017, Ms. Leonard was forced to resign her employment at Naber and DA due to Mr. Naber's and management's unlawful retaliation.

71. Ms. Leonard was suffering from increased frequency of migraine headaches. These migraine headaches were not being controlled by her regularly prescribed medication. Ms. Leonard also experienced severe hair loss due to the stress created by this unlawful retaliation. Further, after Ms. Leonard's resignation, Mr. Naber sent Ms. Leonard a text message stating that she was "legally banned" from Naber franchises for "stirring up trouble."

72. On or about February 21, 2017, after suffering indignities and unfounded disciplinary actions by her supervisors, Ms. Leonard was constructively discharged from employment at Naber and DA.

73. Naber Subway and DA would not have created an objectively intolerable working environment, prompting Ms. Leonard's constructive discharge, nor taken other discriminatory and retaliatory actions against her but for her disability and/or need for reasonable accommodations and/or her brother's disability and/or need for reasonable accommodations.

74. Indeed, Ms. Leonard's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disability and/or requests for accommodations and/or her brother's disability and/or need for reasonable accommodations.

75. Naber Subway and DA's working conditions that precipitated Ms. Leonard's constructive discharge were pretextual and directly related to Naber Subway and DA's intent to discriminate and retaliate against Ms. Leonard due to her disability and/or need for reasonable accommodations and/or her brother's disability and/or need for reasonable accommodations.

76. As a direct and proximate result of Naber Subway and DA's actions, Ms. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

77. At all times material hereto, Naber Subway and DA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Leonard so as to support an award of punitive damages.

78. The above-described acts by Naber Subway and DA and employees of Naber Subway and DA constitute disability discrimination and retaliation in violation of the ADA.

### Count II: Failure to Accommodate in Violation of the Americans with Disabilities Act

79. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

80. Ms. Leonard has suffered from migraine headaches for a number of years.

81. Migraine is a chronic condition affecting the brain and/or vascular system that affects major life functions, such as concentration and thinking. Migraine headaches produce symptoms such as severe sensitivity to light and sound. These symptoms can induce vomiting and vision problems.

82. Migraine headaches are typically controlled with medication. Stress causes the symptoms of migraine to be particularly severe and uncontrolled by medication. This health issue is a recognized disability under the Americans with Disabilities Act ("ADA").

83. Alternatively, Ms. Leonard was regarded by Mr. Naber, Naber Subway, and DA as having a disability.

84. Ms. Leonard was able to perform her employment functions with or without accommodations.

85. Ms. Leonard revealed her disability to her supervisor prior to her constructive discharge.

86. Naber Subway, nor DA, engaged in the interactive process with Ms. Leonard to determine what reasonable accommodation Ms. Leonard would require.

87. Upon information and belief, Ms. Leonard's coworker, Caleb [last name unknown], who also suffers from migraines, was permitted to be in an unpaid leave status as an accommodation.

88. Due to increasing discrimination and retaliation Ms. Leonard experienced due to revealing her disability, Ms. Leonard was constructively discharged on or about February 21, 2017.

89. Due to increasing discrimination and retaliation Ms. Leonard experienced due to being related to Mr. Leonard, Ms. Leonard was constructively discharged on or about February 21, 2017.

90. Naber Subway and DA would not have created an objectively intolerable working environment, prompting Ms. Leonard's constructive discharge, nor taken other discriminatory and retaliatory actions against her but for her disability and/or need for

reasonable accommodations and/or her brother's disability and/or need for reasonable accommodations.

91. Indeed, Ms. Leonard's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disability and/or requests for accommodations and/or her brother's disability and/or need for reasonable accommodations.

92. Naber Subway and DA's working conditions that precipitated Ms. Leonard's constructive discharge were pretextual and directly related to Naber Subway and DA's intent to discriminate and retaliate against Ms. Leonard due to her disability and/or need for reasonable accommodations and/or her brother's disability and/or need for reasonable accommodations.

93. As a direct and proximate result of Naber Subway and DA's actions, Ms. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

94. At all times material hereto, Naber Subway and DA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Leonard so as to support an award of punitive damages.

95. The above-described acts by Naber Subway and DA and employees of Naber Subway and DA constitute disability discrimination and retaliation in violation of the ADA.

### Count III: Discrimination and Retaliation in Violation of Genetic Information Nondiscrimination Act of 2008

96. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

97. Ms. Leonard is the minor sister of Tyler Leonard, who has filed a contemporaneous Complaint against Naber Subway and DA.

98. Mr. Leonard is a qualified individual with a disability, to-wit, mild Cerebral Palsy. Mr. Leonard was diagnosed with this disability at age 13, but like had it since at or before birth.

99. CP is a brain injury or malformation that occurs prior to or at birth. CP is a chronic, permanent condition that affects major life activities, such as walking, talking, or thinking, due to loss of body movement control, muscle control, muscle coordination, muscle tone, reflex, posture and balance.

100. CP can also impact fine motor skills, gross motor skills and oral motor functioning.

101. CP is known to have, at least in part, a genetic origin.

102. CP is a disease or disorder to manifest from a genetic origin, such that individuals with CP are protected from discrimination and retaliation under GINA.

103. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Mr. Leonard worked.

104. On or about that day, Mr. Naber had become aware that Mr. Leonard had mild CP. Mr. Naber, without warning, summoned Mr. Leonard into the dining room of the Bland Subway restaurant from behind the sandwich station.

105. In front of customers, Mr. Naber loudly exclaimed, "[Tyler], I hear you have [CP]."

106. Mr. Naber, and other supervisory employees, discriminated and retaliated against Mr. Leonard due to his CP.

107. Due to Ms. Leonard's familial relation to Mr. Leonard, Ms. Leonard was subject to multiple abusive text messages from Mr. Naber.

108. Ms. Leonard was further subject to unwarranted discipline by Mr. Naber and other supervisory employees due to her familial relation with Mr. Leonard.

109. On or about February 21, 2017, after suffering indignities and unfounded disciplinary actions by her supervisors, Ms. Leonard was constructively discharged from employment at Naber and DA.

110. Naber Subway and DA would not have created an objectively intolerable working environment, prompting Ms. Leonard's constructive discharge, nor taken other discriminatory and retaliatory actions against her but for her disability and/or need for reasonable accommodations and/or her brother's disability and/or need for reasonable accommodations.

111. Indeed, Ms. Leonard's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disability and/or requests for accommodations and/or her brother's disability and/or need for reasonable accommodations.

112. Naber Subway and DA's working conditions that precipitated Ms. Leonard's constructive discharge were pretextual and directly related to Naber Subway and DA's intent to discriminate and retaliate against Ms. Leonard due to her disability and/or need for reasonable accommodations and/or her brother's disability and/or need for reasonable accommodations.

113. As a direct and proximate result of Naber Subway and DA's actions, Ms. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

114. At all times material hereto, Naber Subway and DA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Leonard so as to support an award of punitive damages.

115. The above-described acts by Naber Subway and DA and employees of Naber Subway and DA constitute disability discrimination and retaliation in violation of GINA.

WHEREFORE, Plaintiff Taylor Nichole Leonard prays for judgement against Defendants Naber Subway, Inc. and Doctor's Associates, Inc. d/b/a Subway IP, Inc., d/b/a Subway and for equitable relief, compensatory, punitive damages, together with prejudgment interest from the date of termination of Mr. Leonard's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*